UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAVIND BHONAGIRI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DHEERAJ PANDEY, et al., <br><br> Defendants. | Case No. 19-cv-03817-WHO <br><br> **ORDER REGARDING MOTIONS TO DISMISS** <br><br> Dkt. Nos. 51, 52 |

Defendant Nutanix Inc. ("Nutanix") and the individual defendants in this action ("Individual Defendants") separately move to dismiss the Amended Complaint ("FAC") brought by Plaintiffs Aravind Bhonagiri, Ashwin Juneja, and TJ Park ("Plaintiffs"). Nutanix asserts that Plaintiffs lack standing to bring the FAC because they did not adequately plead demand futility upon Nutanix's Board of Directors as required by Rule 23.1. I agree, and also find that the FAC fails to adequately state a claim at least against all defendants except Pandey and Williams. Accordingly, both motions are GRANTED.

**BACKGROUND**

This action arises out of multiple statements made by Nutanix, through its public filings and statements of its officers, relating to its investments in lead generation, new customer growth, and sales personnel as it made several transitions in its product offerings. A securities class action based upon the same statements ("Class Action") is also before me. *See Scheller v. Nutanix, Inc. et al.*, Case No. 19-cv-1651 (N.D. Cal.). In that case, I granted Nutanix's motion to dismiss the amended complaint on March 9, 2020. Class Action Dkt. No. 121. After the plaintiffs filed an amended complaint ("SAC"), I denied Nutanix's second motion to dismiss ("Order"). Class Action Dkt. No. 140. I found that while many of the Nutanix's statements were not actionable, the following statements were misleading: (i) Pandey's statements in a March 2018 analyst

conference call that "Q2 saw us add a record number of new customers, bringing our total number to 8,870" and that he attributed new customer growth to a "huge contribution to overall mid market customer acquisition"; (ii) Williams's statements during a May 2018 investor conference call that "we've actually had a renewed focus with the channel on new customer logos" and that Nutanix was "really excited about what's happening in the channel with the pipeline for new logos and things like that"; (iii) Williams's statement during the March 2018 call that Nutanix's sales regions "experienced record sales productivity in the quarter"; (iv) Williams's statement during the May 2018 call that Nutanix had "executed [a hiring] full-court press flawlessly"; (v) a statement in a May 24, 2018 press release that Nutanix "had strong success in [its] hiring in the quarter that positions [it] to deliver on [its] future growth plans"; and (vi) Williams's statement during an August 2018 analyst conference call that the company's "ramped rep sales productivity has increased sequentially for the last three six-month periods." I found that scienter had been adequately alleged for all of the statements except the statements regarding hiring (e.g., statements (iv) and (v) above). *Id.* at 12-17.

Plaintiffs filed this action, a stockholder derivative action, on July 1, 2019. Dkt. No. 1. After Nutanix filed motions to dismiss, Plaintiffs voluntarily amended on June 17, 2020, after my order on the first motion to dismiss in the Class Action but before the second order. Dkt. No. 48 ("SAC"). Nutanix and the Individual Defendants again filed separate motions to dismiss on July 17, 2020. *See* Dkt. Nos. 51 ("Mot. I"), 52 ("Mot. II"). Plaintiffs filed oppositions on August 14, 2020, Dkt. Nos. 55 ("Oppo. I"), 56 ("Oppo. II"), and Nutanix and the Individual Defendants filed replies on September 4. Dkt. Nos. 59 ("Reply I"), 60 ("Reply II").

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be

2

"more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I.  NUTANIX'S MOTION TO DISMISS

At issue in Nutanix's motion to dismiss is whether Plaintiffs have adequately pleaded demand futility. "A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (citation omitted); *see also* Fed. R. Civ. Proc. 23.1. Under Delaware law, directors are entitled to a presumption that they fulfilled their fiduciary duties, and the plaintiffs bear the burden to overcome that presumption. *In re Yahoo! Inc. S'holder Derivative Litig.*, 153 F. Supp. 3d 1107, 1118 (N.D. Cal. 2015). The Delaware Supreme Court has stated that a plaintiff's particularized factual allegations must "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del.

3

1993). This standard is "more onerous" than that required to adequately state a claim pursuant to Rule 12(b)(6). *Yahoo!*, 153 F. Supp. 3d at 1119.

The parties first dispute whether Plaintiffs must satisfy this requirement with respect to the Board of Directors at the time of the filing of the original complaint or the Amended Complaint. The Delaware Supreme Court has held that "when an amended derivative complaint is filed, the existence of a new independent board of directors is relevant to a Rule 23.1 demand inquiry only as to derivative claims in the amended complaint that are not already validly in litigation." *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006); *see also Zoumboulakis v. McGinn*, 148 F. Supp. 3d 920, 926 (N.D. Cal. 2015). "Three circumstances must exist to excuse a plaintiff from making demand under Rule 23.1 when a complaint is amended after a new board of directors is in place: first, the original complaint was well pleaded as a derivative action; second, the original complaint satisfied the legal test for demand excusal; and third, the act or transaction complained of in the amendment is essentially the same as the act or transaction challenged in the original complaint." *Braddock*, 906 A.2d at 786. A complaint that has been dismissed, even without prejudice, is not validly in litigation. *Id.*

Here, the prior Complaint was not dismissed; it was mooted by the filing of the FAC. Nutanix and the Individual Defendants moved to dismiss the initial complaint pursuant to Rules 12(b)(6) and 23.1. Dkt. Nos. 42, 43. Plaintiffs did not oppose these motions, but voluntarily filed the FAC. Dkt. No. 48. Case law, including that cited by Plaintiffs, suggests that a plaintiff need not allege demand futility when voluntarily amending a complaint if the original complaint was well-pleaded. *Harris v. Carter*, 582 A.2d 222, 231 (Del. Ch. 1990). By contrast, "the filing of an amended complaint may trigger a new requirement to make demand if the earlier complaint could not have survived a motion to dismiss, even if it had not actually been dismissed." *In re Nyfix, Inc. Derivative Litig.*, 567 F. Supp. 2d 306, 311 (D. Conn. 2008).

Plaintiffs assert that the Amended Complaint elaborates on the "well-pled claims set forth in the original complaints filed by plaintiffs Bhonagiri and Juneja," but do not meaningfully contest Nutanix's assertions that this complaint would not have withstood its motion to dismiss. *See* Oppo. I 8. I am not persuaded by Plaintiffs' argument. I dismissed a complaint in the Class

4

1   Action that was substantially similar to the original Complaint.[1]  In addition, as discussed below,

2   the FAC also fails to state a claim against any defendant, except for possibly Pandey and

3   Williams.  Thus, the original complaint was not "validly in litigation" such that Plaintiffs were

4   excused from showing demand futility upon Nutanix's board at the time of the filing of the SAC.

5         However, even assuming that Plaintiffs need only raise a reasonable doubt as to five of the

6   nine members of the Board as of the filing of the first complaint, they fail to do so.  First, Plaintiffs

7   allege that defendants Gomo, Parks, and Scarpelli were members of the Audit Committee that

8   were responsible for approving the improper statements, earnings guidance, and press releases.

9   FAC ¶ 248.  Such vague allegations fail to establish that these defendants face a substantial

10  likelihood of liability.  *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del. Ch.

11  2009) ("Demand is not excused solely because the directors would be deciding to sue

12  themselves"); *see also South v. Baker*, 62 A.3d 1, 17 (Del. Ch. 2012) ("an allegation that the

13  underlying cause of a corporate trauma falls within the delegated authority of a board committee

14  does not support an inference that the directors on that committee knew of and consciously

15  disregarded the problem for purposes of Rule 23.1."); *compare In re Intuitive Surgical S'holder*

16  *Derivative Litig.*., 146 F. Supp. 3d 1106, 1121 (N.D. Cal. 2015) (allegations that directors were

17  part of audit committee and received additional information that would have put them on notice of

18  failure to comply with obligations).

19        For similar reasons, that Gomo, Conway, McAdam, Parks, and Scarpelli served as a

20  directors at Nutanix and signed the 2018 10-K does not satisfy Plaintiffs' burden.  FAC ¶¶ 253-57;

21  *see also Yahoo!*, 153 F. Supp. 3d at 1120 (conclusory allegations that directors signed or reviewed

22  disclosures at issue was not adequate to excuse demand); *In re Finisar Corp. Derivative Litig.*,

23  542 F. Supp. 2d 980, 989–96 (N.D. Cal. 2008) (rejecting allegations of futility based upon

24  membership on Audit Committee and signature on annual reports, among other things); *see also*

25  *Potter v. Hughes*, 546 F.3d 1051, 1058–59 (9th Cir. 2008) (fact that board members voted for the

---

[1] Notably, Plaintiffs' original complaint relies heavily upon allegations regarding Nutanix's representations and investments in lead generation spending.  I have twice found that these statements were not false or misleading.

transactions that plaintiff challenged not sufficient to establish demand futility).

Plaintiffs also assert that defendant Bostrom is "a professional board member" and would not institute litigation against the individual defendants because that would jeopardize her chances to continue to serve as a professional board member. *Id.* ¶ 251. Similarly, defendant Mhatre signed Nutanix's 2018 10-K and was one of Nutanix's earliest investors. *Id.* ¶ 252. He has profited from his investments, and could stand to lose more if he were to institute action against the company. *Id.* These allegations alone do not establish that demand would be futile as to these defendants, and may even suggest to the contrary. *Shabbouei v. Potdevin*, No. CV 2018-0847-JRS, 2020 WL 1609177, at *9 (Del. Ch. Apr. 2, 2020) (director that is shareholder may be more likely to align with other shareholders' interests). Next, Plaintiffs assert that Gomo, McAdam, Parks, and Scarpelli "each sold Nutanix stock under highly suspicious circumstances." *Id.* ¶ 249. Nutanix challenges the merits of these insider trading claims. Mot. I 21-22. As discussed further below, I am not persuaded by these allegations.

Finally, Plaintiffs devote much of their opposition to the argument that Nutanix's statements were false and misleading and attribute knowledge of all of these statements to the Individual Defendants. *See* Oppo. I 11-16. As discussed at length in my orders in the Class Action, most of Nutanix's statements that Plaintiffs challenge are not false or misleading. And as discussed further below, these generalized allegations that the company statements were false does not establish a particularized showing of director knowledge.

Similarly, Plaintiffs assert that the Demand Board faces a substantial likelihood of liability for violations of Section 14(a) based upon alleged misrepresentations in the 2018 Proxy statement. But Plaintiffs' argument concerning demand futility is little more than a recitation that they adequately alleged a cause of action under Section 14(a). *See* Oppo. I 22-23. As discussed further below, I am not persuaded that they have done so. As for demand futility, Plaintiffs do not provide any individualized facts that would overcome the presumption that the directors fulfilled their fiduciary duties. The allegations with regard to each board member's involvement in the 2018 Proxy statement merely state that the "Director Defendants caused Nutanix to file a proxy statement." FAC ¶ 181.

1  For all of these reasons, Plaintiffs failed to comply with Rule 23.1. Both motions to
2  dismiss must be granted on this basis.[2]

## II. INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Because Plaintiffs failed to adequately allege demand futility, they lack standing to bring claims on behalf of Nutanix and I need not address the Individual Defendants' motion to dismiss. However, I note that even if they have standing, the FAC would not survive the Motion to Dismiss.

As a preliminary matter, the Individual Defendants assert that Plaintiffs improperly used allegations from the complaint in the Class Action, including from confidential witnesses ("CWs"), without independently verifying them. Mot. II 5-6. The FAC is not identical to the operative complaint in the Class Action, but does borrow allegations regarding CWs. Unlike many of the cases that the Individual Defendants cite, here the FAC is based upon the same public statements alleged in the Class Action. Moreover, Plaintiffs assert that they spoke with counsel in the Class Action. Oppo. II 18; FAC at 1. No defendant has separately moved to strike these allegations, which are largely irrelevant to this motion due to my prior findings regarding the falsity of the alleged statements. In light of these facts, I will not disregard Plaintiffs' allegations regarding CWs. If the defendants wish to challenge such allegations in a future complaint, they should file a separate Rule 12(f) motion to strike.

### A. Fiduciary Duty Claims

Plaintiffs allege that all of the Individual Defendants breached their fiduciary duties of candor, good faith, and loyalty and that the Officer Defendants breached their duty of care and loyalty in connection with the misrepresentations made by the company. FAC ¶¶ 265-66. They also assert that the Director Defendants breached their duty of loyalty in "at least recklessly issuing the improper statements detailed herein." *Id.* ¶ 267. The Audit Committee Defendants allegedly breached their duty of loyalty by approving these statements. *Id.* ¶ 268. The Insider Selling Defendants purportedly breached their duty of loyalty by selling stock on the basis of

---

[2] Nutanix's request for judicial notice is DENIED as moot. Dkt. No. 53.

improper information. *Id.* ¶ 269. Relevant to all of these allegations is whether the Individual Defendants participated in or knew of the misleading nature of the statements.

The parties dispute whether Rule 9(b) or Rule 8 applies to claims for breach of fiduciary duty that sound in fraud. Oppo II. 3 n.4. Delaware courts have held that "when a breach-of-fiduciary-duty claim is premised on an accusation of fraud, this court has examined the complaint against the particularized pleading standard of Rule 9(b)." *Lewis v. Ward*, No. CIV.A. 15255, 2003 WL 22461894, at *4 (Del. Ch. Oct. 29, 2003), *aff'd*, 852 A.2d 896 (Del. 2004). Accordingly, the question is whether each of Plaintiffs' claims are premised on an accusation of fraud.

Plaintiffs' allegations with respect to the various "improper" statements made by Nutanix regarding sales hiring and new customers sound in fraud. Plaintiffs assert that the statements were "false and misleading" and that the defendants knew that the statements were misleading. *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. CIV.A. 762-N, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005) ("While Rule 9(b) provides that 'knowledge ... may be averred generally,' where pleading a claim of fraud or breach of fiduciary duty that has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pleaded facts from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it."). Accordingly, these allegations must be pleaded with particularity.[3] By contrast, Defendants do not counter Plaintiffs' authority that their claims based upon insider trading need only satisfy Rule 8. *Pfeiffer v. Toll*, 989 A.2d 683, 692 (Del. Ch. 2010), *abrogated on other grounds by Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831 (Del. 2011).

### 1. Breach of Fiduciary Duty based upon false statements

Plaintiffs' fiduciary duty claims based upon Nutanix's misstatements largely mirror the allegations in the Class Action. The Individual Defendants assert that these statements are not false and misleading, and that Plaintiffs fail to establish the requisite mental state for each

---

[3] Even under a lower pleading standard, the cases that Plaintiffs cite demonstrate that they must at least adequately plead that the Individual Defendants knew that the information was false or misleading. *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998); *In re INFOUSA, Inc. Shareholders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007). For the reasons discussed, they failed to do so.

8

defendant. Mot. II 8-14. As discussed above, I have already rejected the argument that most of the alleged statements were false and misleading; only certain of Nutanix's statements regarding new customer growth and sales productivity are misleading. The FAC here contains no different allegations that change this conclusion. Accordingly, I address only whether the Individual Defendants breached their fiduciary duty with respect to the 2018 Proxy Statement (which was not alleged in the Class Action), and the allegations regarding the misleading statements about new customer growth and sales productivity.

### a. 2018 Proxy Statement

The FAC states that "[o]n November 5, 2018, the Director Defendants caused Nutanix to file a proxy statement for its 2019 annual meeting of shareholders pursuant to Section 14(a) of the Exchange Act." FAC ¶ 181. This represented that the company was "focus[ed] on . . . continued investment in acquiring new customers," when in fact lead generation activities were flat and the pipeline was declining. *Id.* ¶ 182. Although this statement is similar to the statements I found were misleading regarding new customer growth, I find that it is distinguishable in several respects and was not false or misleading. While Nutanix's earlier statements indicated that it was in fact increasing the number of its new customers, the 2018 Proxy Statement focused on Nutanix's investment in acquiring new customers. Based on the allegations in the FAC, this was true. For example, at the August 2018 sales kickoff meeting "Attanasio and Lautenbach announced on stage that they were going to put programs in place in an attempt to replenish the pipeline and assign more reasonable quotas to salespeople." SAC ¶ 123. No allegations indicate that in November of 2018, Nutanix was not investing in renewing its pipeline, obtaining new customers, or improving sales productivity. Accordingly, Plaintiffs have not pleaded that this statement was false or misleading in the first instance.

Moreover, Plaintiffs' allegations with respect to the Individual Defendants' involvement in and/or knowledge of the Proxy Statement are thin. They argue only that "each of the Director Defendants was directly responsible for authoring and approving the misleading 2018 Proxy Statement, which was issued 'By Order of the Board of Directors.'" Oppo. II 6. As discussed further below, these statements are not sufficient to establish all of the Individual Defendants'

9

knowledge of any misrepresentations in the 2018 Proxy Statement.

### b. Remaining alleged misleading statements

While I have found that some of the remaining statements made by Pandey and Williams were misleading and made with scienter, Plaintiffs have not adequately alleged that the other Individual Defendants participated in making the statements and/or knew of the misleading nature of the statements but failed to correct them.

First, the misleading statements were made in conference calls and in one May 2018 press release. Therefore, Plaintiffs' allegations as to the Individual Defendants' involvement with SEC filings are inapposite. *See* Oppo. II 5-6. Plaintiffs contend that the misleading statements are presumed to constitute the "collective action of the officers" under the group pleading doctrine. *Id.* at 6. In cases involving allegedly false statements by a company, the group pleading doctrine allows plaintiffs to "plead fraud by officers and executives involved in the day-to-day management of those parts of the corporation involved in the fraud through general averment." *In re Ross Sys. Sec. Litig.*, No. C-94-0017-DLJ, 1994 WL 583114, at *5 (N.D. Cal. July 21, 1994). It is unclear whether the group pleading doctrine would apply to statements made during conference calls, as opposed to statements in "prospectuses, registration statements, annual reports, or other 'group published information.'" *In re Ramp Networks, Inc. Sec.*, 201 F. Supp. 2d 1051, 1078 (N.D. Cal. 2002). At any rate, the group pleading doctrine does not mean that officers and executives are automatically liable for statements of the company by virtue of their positions. Plaintiffs have failed to plead any facts that would suggest that each of the Individual Defendants (except Pandey and Williams) were involved in the management of the company such that they would have known that the statements made by Pandey and Williams were misleading. *See In re Interactive Network, Inc. Sec. Litig.*, 948 F. Supp. 917, 922 (N.D. Cal. 1996) (rejecting group pleading doctrine where plaintiffs "failed to plead circumstances sufficient to support a finding that the [] defendants were involved in the day-to-day running" of the company).

Plaintiffs do allege that the Audit Committee member defendants must have known of the misleading nature of the statements. Oppo. II 11. But it is not clear whether the Audit Committee was responsible for statements made in conference calls or the 2018 Proxy Statement. In addition,

as with the demand futility question, Plaintiffs have not shown that membership on this committee alone leads to a conclusion that the individual Audit Committee members knew of the misleading nature of the statements. *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 934 (N.D. Cal. 2010).

Plaintiffs also assert that "other executives and officers" were aware of the misleading statements by virtue of their participation in company meetings. Oppo. II 9. These vague statements do not establish which defendants knew what, let alone knowledge of particular false and misleading statements. *See id.* at 928 ("the fact that the backlog and revenues were discussed at board meetings and touted in press releases and conference calls cannot imply that any Accuray directors knew of the alleged accounting problems").

Finally, Plaintiffs state that because the statements concerned "key areas of [Nutanix's] business," knowledge must be imputed to the Individual Defendants. Oppo. II 9-10. While sales productivity and new customer additions were undoubtedly important to Nutanix, the statements that were misleading are narrow. Without more, I will not impute knowledge to all of the Individual Defendants based on the fact that statements by Pandey and Williams pertained to issues that were important to the company.

Because Plaintiffs have failed to adequately allege that the Individual Defendants (except for possibly Pandey and Williams) were involved in or knew of the misleading nature of Nutanix's statements, they fail to allege any breach of fiduciary duty with respect to these statements.

### c.  Breach of Fiduciary Duty based on insider trading

Plaintiffs assert that the Insider Selling defendants took advantage of their knowledge of Nutanix's misleading statements by selling their company holdings at an inflated stock price. Oppo. II 12. To plead a claim for insider trading under Delaware state law, plaintiff must plead that "(1) the corporate fiduciary possessed material, nonpublic company information; and (2) the corporate fiduciary used that information improperly by making trades because she was motivated, wholly or in part, by the substance of that information." *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1017–18 (N.D. Cal. 2007).

Plaintiffs' insider trading claim fails because the FAC fails to allege that most of Nutanix's

11

1  statements were false and misleading, or that the Insider Selling defendants knew of the
2  misleading statements.  If these defendants did not know that Nutanix's statements were false or
3  misleading, they could not have improperly used the information.  Accordingly, Plaintiffs fail to
4  state a claim for breach of fiduciary duty based on insider trading.[4]

### B.   Section 14(a) Claim

To plead a claim under Section 14(a) of the Securities Act, a "plaintiff must allege that: (1) defendants made a material misrepresentation or omission in a proxy statement; (2) with the requisite state of mind; and (3) that the proxy statement was the transactional cause of harm of which plaintiff complains." *Zoran*, 511 F. Supp. 2d at 1015.  As discussed above, Plaintiffs have not alleged that the 2018 Proxy Statement contained a false or misleading statement, or that the Individual Defendants knew of the misleading nature of that statement.  For that reason alone, Plaintiffs' Section 14(a) claim fails.  Moreover, Plaintiffs fail to establish that the alleged misrepresentation was material.  "An omitted fact or misrepresentation in a proxy statement is material when there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Id.*  The FAC is devoid of any non-conclusory allegations that suggest a substantial likelihood that a reasonable shareholder would consider Nutanix's investment in new customers important in deciding how to vote.  Similarly, Plaintiffs fail to meaningfully address in the FAC or in their opposition the third prong of the Section 14(a) test. *See* Mot. II 22-23; Oppo. II 12-13.  For these reasons, they have failed to plead a violation of Section 14(a).

### CONCLUSION

For the above reasons, Nutanix's Motion to Dismiss and the Individual Defendants'

---

[4] Because Plaintiffs failed to state a claim for breach of fiduciary duty, their waste and unjust enrichment claims also fail.  *See* Oppo. II 13.

Motion to Dismiss are GRANTED WITH LEAVE TO AMEND.  Plaintiffs shall file an amended complaint by October 26, 2020.

**IT IS SO ORDERED.**

Dated: October 5, 2020



William H. Orrick
United States District Judge